IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BIG BLUE CAPITAL PARTNERS,             Case No. 6:11-cv-06368-AA
LLC,                                              OPINION AND ORDER

           Plaintiff,

    v.

RECONTRUST COMPANY, N.A.;
THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK,
as trustee for the benefit
of CWALT, INC., alternative
loan trust 2007-19 mortgage
pass through certificates,
series 2007-19; and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.;

           Defendants.

John P. Bowles
Jeffrey A. Myers
Bowles Fernandez Law LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, Oregon 97035
     Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Pilar C. French
Kristen L. Tranetzki
Lane Powell PC
601 SW 2nd Avenue, Suite 2100
Portland, Oregon 97402
    Attorneys for defendants

AIKEN, Chief Judge:

Defendants ReconTrust Company, N.A. ("ReconTrust"), the Bank of New York Mellon fka the Bank of New York ("BNYM"), and Mortgage Electronic Registration Systems, Inc. ("MERS") move to dismiss plaintiff Big Blue Capital Partners, LLC's claims pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In addition, defendants filed two motions for judicial notice. For the reasons set forth below, defendants' motions[1] are granted and this case is dismissed.

## BACKGROUND

On April 2, 2007, Thomas and Trina Reid[2] took out a loan from Plaza Home Mortgage, Inc. ("Plaza"), in the amount of $455,000, to purchase a residential property (the "Property"). Pursuant to this transaction, the Reids executed a promissory note (the "Note") in favor of Plaza. The Note was secured by a trust deed (the "Deed of Trust"), which lists Plaza as the lender, MERS as the beneficiary, and Ticor Title Company as the trustee. The Deed of Trust was filed in Douglas County, Oregon on April 6, 2007.

---

[1] Defendants' Supplemental Motion for Request for Judicial Notice is granted in its entirety; defendants' Request for Judicial Notice is also granted, except in regard to plaintiff's online advertisement, as to which the motion is denied.

[2] The Reids are not a party to this litigation.

Pursuant to the Deed of Trust, the Reids agreed to make monthly mortgage payments as required under the Note; the Reids also agreed that they would be in default, and subject to foreclosure, if they failed to make such payments. In addition, the Deed of Trust required the Reids to obtain approval, in writing, before selling or transferring their interest in the Property.

In 2009, the Reids stopped making the requisite loan repayments, thereby materially defaulting. On February 4, 2010, MERS assigned the Deed of Trust to BNYM, as trustee for certificate holder CWALT, Inc. Also on February 4, 2010, MERS appointed ReconTrust to serve as successor trustee for the Deed of Trust. That same day, ReconTrust executed a Notice of Default and Election to Sell the Property. On February 8, 2010, the Assignment of the Deed of Trust, Appointment of Successor Trustee, and Notice of Default and Election to Sell were recorded in the official records of Douglas County.

On December 1, 2010, ReconTrust issued a Rescission of the Notice of Default, which was duly recorded in the official records of Douglas County on December 6, 2010.

On December 9, 2010, the Reids filed a petition for relief under Chapter 7 of the Bankruptcy Code. The petition identified the value of their interest in the Property as $450,000, subject to several secured claims, including one by "Bank of America Home Loans" in the amount of $450,000. The Reids, however, did not list any purported claims against defendants as assets. On March 10,

Page 3 - OPINION AND ORDER

2011, the bankruptcy court granted the petition, thereby discharging the Reids' debts.

On May 26, 2011, ReconTrust executed a second Notice of Default and Election to Sell the Property. On May 31, 2011, the second Notice of Default and Election to Sell was recorded in the official records of Douglas County. The Notice stated that the foreclosure sale was scheduled for October 6, 2011 at the Douglas County Courthouse. A foreclosure sale has not yet occurred.

On October 11, 2011, the Reids executed a quitclaim deed, conveying their interest in the Property to plaintiff, a limited liability company created under the laws of Ohio.[3] Pursuant to that contract, plaintiff agreed to pay the Reids $10,000 for the Property: $1000 immediately and $9000 "upon complete satisfaction of [plaintiff] in the negotiation and settlement of [the] underlying lien holder's interest."

On October 12, 2011, plaintiff filed a complaint in Douglas County Circuit Court; plaintiff asserts eight claims against defendants, all arising out of defendants' alleged failure to comply with the non-judicial foreclosure procedures outlined in the Oregon Trust Deed Act ("OTDA"). On November 18, 2011, defendants removed plaintiff's claims, on the basis of diversity jurisdiction, to this Court. Subsequently, defendants moved to dismiss

---

[3] Plaintiff did not actually become a formal business entity until October 13, 2011, two days after it bought the Property from the Reids and one day after it filed the present action. In addition, plaintiff was not licensed to do business in Oregon until January 17, 2012. See Pl.'s Resp. to Mot. Dism. 13.

Page 4 - OPINION AND ORDER

plaintiff's complaint.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." Kingman Reef Atoll Invs., LLC v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that amount

Page 5 - OPINION AND ORDER

to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216, reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011).

**DISCUSSION**

Defendants assert that plaintiff's complaint must be dismissed because this Court lacks subject-matter jurisdiction. In addition, defendants contend that plaintiff fails to state plausible claims for relief.

I. Motions for Judicial Notice

To support their motion to dismiss, defendants request that this Court take judicial notice of: plaintiff's Certificate and Articles of Incorporation, filed on October 13, 2011; the Deed of Trust; the Notices of Default and Elections to Sell; the Assignment of the Deed of Trust; the Appointment of Successor Trustee; the Rescission of the Notice of Default; the Reids' petition for relief under Chapter 7 of the Bankruptcy Code; the bankruptcy court docket for the Reids' case; a printout of an online advertisement for plaintiff, describing its business strategy; Niday v. GMAC Mortg., Case No. CV 10-02-0001, Transcript of Proceedings (Clackamas Cnty. Cir. Crt. Oct. 28, 2010); Buckland v. Aurora Loan Servs., Case No. 10-CV-1023, Judgment (Josephine Cnty. Cir. Crt. March 18, 2011); Spencer v. Guaranty Bank, Case No. 10CV0515ST, Memo. Op. (Deschutes

Page 6 - OPINION AND ORDER

Cnty. Cir. Crt. May 5, 2011); Nigro v. Northwest Tr. Servs., Inc., Case No. 11-CV-0135, Letter Op. (Josephine Cnty. Cir. Crt. May 11, 2011); U.S. Bank v. Flynn, Case No. 11-8011, Letter Op. (Columbia Cnty. Cir. Crt. June 23, 2011); Somers v. Deutsche Bank Nat'l Trust Co., Case Nos. CV 11-02-0133 and FE 110027, Letter Op. (Clackamas Cnty. Cir. Crt. July 6, 2011); Yovko v. Northwest Tr. Servs., Inc., Case No. C11-0703CV, Order (Washington Cnty. Cir. Crt. Aug. 3, 2011); Yovko v. Northwest Tr. Servs., Inc., Case No. C11-0703CV, Order (Washington Cnty. Cir. Crt. Nov. 22, 2011); Fed. Nat'l Mortg. Assoc. v. Goodrich, Case No. 11001639E, Judgment (Jackson Cnty. Cir. Crt. Dec. 7, 2011); Melli v. ReconTrust Co., Case No. C12-0112CV, Order (Washington Cnty. Cir. Crt. Jan. 11, 2012); Lind v. Fidelity Nat'l Title Ins. Co., Case No. C116471CV, Order (Washington Cnty. Cir. Crt. Jan. 23, 2012); and Mashia v. Northwest Tr. Servs., Inc., Case No. 1008-12752, Op. and Order (Multnomah Cnty. Cir. Crt. Jan. 23, 2012). Plaintiff does not oppose defendants' motions.

Review of a 12(b)(6) motion is generally limited to the complaint. United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). However, a "court may take judicial notice of 'matters of public record.'" Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (quoting MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986)). Further, a court may take judicial notice of extrinsic documents if they are integral to the plaintiff's claims and their authenticity is undisputed. Parrino v. FHP, Inc., 146 F.3d 699, 706 n. 4 (9th Cir. 1998).

Page 7 - OPINION AND ORDER

Under the Federal Rules of Evidence, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see also Ritchie, 342 F.3d at 909. Facts subject to judicial notice may be considered on a motion to dismiss. Mullis v. U.S. Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

The relevant facts in this case are largely undisputed. Further, most of the documents that defendants seek judicial notice of are recorded in the official records of Douglas County or case law, which are already part of the public record and are therefore capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

With the exception of plaintiff's online advertisement, I find that the additional documents introduced by defendants are also not subject to reasonable dispute. Plaintiff's online advertisement, however, is not part of the public record and, additionally, does not meet the requirements of Fed. R. Evid. 201. Moreover, plaintiff did not incorporate this document by reference, as plaintiff does not make any mention of its business practices in the complaint, other than to describe the process by which it purchased the Reids' Property. See Compl. ¶¶ 19-22. Therefore, except in regard to plaintiff's online advertisement, defendants' requests for judicial notice are granted.

II. <u>Motion to Dismiss</u>

The issue at this stage in the proceedings is whether plaintiff has Article III and prudential standing; or, alternatively, whether plaintiff can allege any plausible claims for relief relating to defendants' attempted foreclosure of the Property.

A. <u>Article III Standing</u>

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." <u>Elk Grove Unified School Dist. v. Newdow</u>, 542 U.S. 1, 11 (2004) (citations and internal quotations omitted).

The "irreducible constitutional minimum of standing" requires three elements: 1) plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely . . . that the injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 560-61 (citations and internal quotations omitted).

Defendants contend that plaintiff lacks standing because its "'injury' resulted from its <u>own decision</u> to purchase an encumbered property from a defaulting borrower." Defs.' Memo. in Supp. of Mot. Dism. 9 (emphasis in original). Defendants argue that a "self-inflicted injury like this" does not satisfy the traceability requirements of Article III. <u>Id.</u> at 10 (citing <u>Pennsylvania v. New Jersey</u>, 426 U.S. 660, 664 (1976)).

Page 9 - OPINION AND ORDER

Conversely, plaintiff asserts that, "as the owner of the property, [it] will imminently suffer the loss of property for which it has paid consideration . . . [t]he fact that [p]laintiff was aware of the imminent injury in no way prevents [p]laintiff from suffering it." Pl.'s Resp. to Mot. Dism. 12. Plaintiff then argues that defendants' reliance on <u>Pennsylvania v. New Jersey</u> is misplaced, "because the injury is not being inflicted upon [p]laintiff by [p]laintiff's actions, but by the wrongful foreclosure process initiated and maintained by [d]efendants." <u>Id.</u>

Thus, it is undisputed that plaintiff knowingly purchased the Property after the Reids materially defaulted on the Note and defendants initiated non-judicial foreclosure proceedings. <u>Id.</u>; <u>see also</u> Compl. ¶¶ 19-22. It is also undisputed that plaintiff had no involvement whatsoever in the lending process and is not named in, or a party to, any of the loan or foreclosure documents. <u>See generally</u> Deed of Trust; Assignment of the Deed of Trust; Notices of Default and Elections to Sell; Rescission of the Notice of Default; Appointment of Successor Trustee; <u>see also</u> Compl. ¶ 5 (the Note "is solely between [the] Reid[s] . . . and Lender"). Moreover, the record reveals that the Reids took out the loan for the Property in their individual capacities and for their own residential use. Accordingly, the allegations in plaintiff's complaint all stem from defendants' response to the Reids' inability to make the requisite payments under the Note.

Therefore, plaintiff did not suffer an injury that is fairly traceable to the challenged actions of defendants. <u>See</u> <u>AOM Group,</u>

Page 10 - OPINION AND ORDER

LLC v. Downey Sav. & Loan Ass'n, F.A., 2010 WL 3342024, *1 n.1 (D.Ariz. Aug. 25, 2010) (company that purchased properties from borrowers in default in order to challenge the statutory non-judicial foreclosure proceedings lacked constitutional standing, citing Fleck & Assocs., Inc. v. City of Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006)); AOM Group LLC v. Provident Funding Assocs. LP, 2010 WL 3342020, *1 (D.Ariz. Aug. 25, 2010) (same). Rather, defendants are correct that, to the extent that plaintiff suffered an injury, it was due to plaintiff's own actions in purchasing the Property after non-judicial foreclosure proceedings had been commenced.

Further, the record makes clear that plaintiff's sole purpose in initiating this suit was to frustrate and delay non-judicial foreclosures under the OTDA in order to exact a settlement from the lender; plaintiff capitalizes on this ruse by purchasing properties, at a fraction of their value, from borrowers who have already materially defaulted on their loan obligations. See Compl. ¶¶ 19-22; see also Compl. Ex. 3 at pg. 1 (contract conveying the Property from the Reids to plaintiff makes payment of 90% of the purchase price contingent upon plaintiff's ability to satisfactorily settle its claims against defendants).

These are precisely the circumstances that Article III's standing requirements seek to prevent federal courts from presiding over. As such, because plaintiff lacks Constitutional standing, this Court does not have subject-matter jurisdiction. Therefore, defendants' motion to dismiss is granted.

B. <u>Prudential Standing</u>

Regardless, even if plaintiff was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, this action would nonetheless be dismissed due to prudential considerations.

The "prudential component of standing precludes the exercise of [subject-matter jursidiction] even where the Constitution's 'irreducible minimum' requirements have been met." <u>Or. Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1108 (9th Cir. 2003); <u>see also</u> <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984) (the court lacks subject-matter jurisdiction, due to prudential limitations, where a plaintiff "rais[es] another person's legal rights" or where a "complaint [does not] fall within the zone of interests protected by the law invoked").

Accordingly, defendants also assert that this action must be dismissed because plaintiff's claims are premised on the legal rights or interests of the Reids, a non-party to this suit. In addition, plaintiff contends that the OTDA was only intended to protect those who have a duty to repay the Note and, as such, plaintiff "does not come within the 'zone of interests' that the OTDA was enacted to protect." Defs.' Memo. in Supp. of Mot. Dism. 10.

Plaintiff does not respond to defendants' argument relating to the "zone of interests" protected by the OTDA, but does contend that this action is not barred by prudential considerations because "[p]laintiff is not seeking to exercise the rights of any third

Page 12 - OPINION AND ORDER

party, it is seeking to exercise its own right as the owner of the [P]roperty." Pl.'s Resp. to Mot. Dism. 13.

### i. Third-Party Standing

"As a general rule, a third-party does not having standing to bring a claim asserting a violation of someone else's rights." Martin v. Cal. Dep't of Veterans Affairs, 560 F.3d 1042, 1050 (9th Cir. 2009) (citing Powers v. Ohio, 499 U.S. 400, 410 (1991)). This rule exists to avoid "the adjudication of rights which those not before the [c]ourt may not wish to assert, and [to ensure] that the most effective advocate of the rights at issue is present to champion them." Elk Grove, 542 U.S. at 15 n.7 (citations and internal quotations omitted).

Accordingly, the rule applies even when the very same allegedly illegal act that affects the litigant also affects a third-party. See United States v. Payner, 447 U.S. 727, 731-732 (1980). While there are a number of exceptions to this general rule, plaintiff does not argue, and the Court does not find, that any of these exceptions apply.

Thus, the sole issue is whether plaintiff's claims are premised upon its own rights or those of a third-party. As discussed above, plaintiff was not the original borrower and had no involvement in the lending process. Although plaintiff purports to have acquired the Property, plaintiff does not allege that it is a party to the Note or Deed of Trust. Moreover, under the terms of the Deed of Trust, the Reids were required to have written permission from the lender, or its successors and assigns, in order

Page 13 - OPINION AND ORDER

to transfer or sell their interest in the Property, which plaintiff does not allege occurred in this case. See Deed of Trust at 10. Accordingly, the Reids, rather than plaintiff, remain the parties required to repay the Note.

As such, plaintiff's complaint asserts the rights of a third-party, as defendants' allegedly wrongful non-judicial foreclosure proceedings infringed only upon the Reids' interests.[4] See HPG Corp. v. Aurora Loan Servs., LLC, 436 B.R. 569, 580 (E.D.Cal. 2010) (corporation did not have prudential standing, on behalf of homeowners in default on their loan obligations, to challenge the lender's alleged failure to follow statutory non-judicial foreclosure procedures). The fact that plaintiff interjected itself into defendants' non-judicial foreclosure, via a real estate purchase contract, in order to profit from the Reids' unfortunate circumstances cannot remedy this defect.

Finally, plaintiff fails to demonstrate any hindrance the Reids' ability to protect their own interests. Rather, the influx of cases arising out of non-judicial foreclosures around the country demonstrate that homeowners are capable of asserting their own rights. See Bertrand v. Suntrust Mortg., Inc., 2011 WL 1113421, *1 (D.Or. March 23, 2011) (noting the "veritable tsunami of investigation into and litigation over mortgage foreclosure

---

[4] In many instances, plaintiff appears to allege that it was the original borrower. Compl. ¶ ¶ 68, 70, 78, 83. For example, the complaint asserts that "[p]laintiff was not in default on May 31, 2011," which was months before plaintiff even purchased the Property from the Reids. Id. at ¶ 83. Thus, the pleadings themselves belie plaintiff's assertion that it's claims are not premised on the rights of a third-party.

Page 14 - OPINION AND ORDER

practices"). The fact that individuals in foreclosure proceedings may be unable to hire legal counsel is not "the type of hindrance necessary to allow another to assert the indigent [party's] rights." Kowalski v. Tesmer, 543 U.S. 125, 132 (2004). Accordingly, plaintiff does not have prudential standing to bring the claims asserted in the complaint. Therefore, plaintiff's claims must be dismissed for this additional reason.

### ii. "Zone of Interests" Protected by the OTDA

In assessing the "zone of interests" protected by a statute, a court need not "inquire whether there has been a congressional intent to benefit the would-be plaintiff," but instead must determine only whether the plaintiff's interests are among those "arguably ... to be protected" by the statutory provision. Nat'l Credit Union v. First Nat'l Bank & Trust Co., 552 U.S. 478, 489 (1998). As such, the "zone of interests" test "is not meant to be demanding." Clarke v. Secs. Indus. Ass'n, 479 U.S. 388, 399-400 (1987).

Despite this low threshold, plaintiff nevertheless does not fall within the "zone of interests" created by the OTDA. The OTDA was enacted "to protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing [lenders] with a quick and efficient remedy." Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp., 209 Or.App. 528, 542, 149 P.3d 150 (2006). To accomplish this goal, the OTDA requires that the lender strictly comply with its provisions in order to effectuate non-judicial foreclosure. Id.;

Page 15 - OPINION AND ORDER

James v. Recontrust Co., 2012 WL 653871, *5 (D.Or. Feb. 29, 2012); see also Or. Rev. Stat. §§ 86.705-86.795.

As such, there is nothing the in the OTDA that even arguably was intended to protect corporate entities, such as plaintiff, that purchase properties already in default and seek to profit by extracting a settlement from the lender. Therefore, this Court lacks subject-matter jurisdiction because plaintiff's interests do not fall within the purview of the OTDA.

## CONCLUSION

Defendants' Request for Judicial Notice (doc. 12) is GRANTED, except in regard to plaintiff's online advertisement, as to which the motion is DENIED. Defendants' Supplemental Motion for Request for Judicial Notice (doc. 16) is GRANTED. Further, defendants' Motion to Dismiss (doc. 10) is GRANTED. Accordingly, defendants' request for oral argument is DENIED as unnecessary. This case is DISMISSED and all pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated this 4th day of May 2012.

_____
Ann Aiken
United States District Judge

Page 16 - OPINION AND ORDER